**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

STEVEN ARMSTRONG, DARLA AMAN, KY HELSETH, MIKE McLEOD, and DOUG SANDSTROM,

Plaintiffs,

v.

GREAT LAKES HIGHER EDUCATION CORPORATION, a Wisconsin Corporation,

Defendant.

Civil No. 00-1543 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON CROSS SUMMARY JUDGMENT MOTIONS**

---

Thomas R. Jacobson, LOMMEN, NELSON, COLE & STAGEBERG, P.A., 400 South Second Street, Suite 210, Hudson, Wisconsin 54016, for plaintiff.

Ian A. Pitz, MICHAEL BEST & FRIEDRICH LLP, One South Pinckney Street, P.O. Box 1806, Madison, Wisconsin 53701, for defendant.

Plaintiffs are former employees of defendant Great Lakes Higher Education Corporation ("Great Lakes"), a non-profit corporation that guarantees and services student loans. Plaintiffs are suing under ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits they claim are owed to them under Great Lakes' severance benefit plan. This matter is now before the Court on the parties' cross motions for summary judgment.

FILED ____
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ____
DEPUTY CLERK ____

## BACKGROUND

Between 1991 and 1997, Great Lakes operated an office in St. Paul, Minnesota, with two or three employees who concentrated on marketing. In April 1997, Great Lakes merged with Northstar Guarantee ("Northstar"). Upon this merger, Great Lakes took over Northstar's St. Paul office, and began performing additional activities in Minnesota including loan processing, customer service, marketing, and technical support. All of these functions were previously performed by Northstar out of the same location.

Plaintiffs were hired between May 1997 and August 1998 to work as computer programmers at Great Lakes' St. Paul office (the former Northstar office). All five plaintiffs were fired on February 15, 2000. While plaintiffs were employed by Great Lakes, the company had in effect a Severance Security Plan ("Great Lakes Plan" or "Plan"). Among other provisions, the Plan provides that employees hired at a "new business location" within the first 24 months of that location's operation are entitled to one week's pay for each full month of service. Harril Dec. Ex. 1. The Plan also provides that "[n]othing in this document is intended to . . . restrict the Corporation's right to initiate a termination of employment and interpret the provisions of this Plan." *Id.*

On February 14, 2000, the day before plaintiffs' official termination, each received a letter explaining the severance benefits available under the Plan, and calculating the benefits that the particular employee would receive. The letter also included a release agreement, which employees were required to sign in order to receive severance benefits. The agreement released all claims against Great Lakes, and explained that any benefits

under the Plan were consideration for employees' signing the release. Each plaintiff signed the release and received benefits as provided in the February 14 letters. Four of the plaintiffs requested benefits under the "new business location" provision of the Plan. Great Lakes denied these requests, explaining that the St. Paul office was not a "new business location" as that term is used in the Plan. Plaintiffs disagreed, and sued to recover benefits they claim are owed to them under the Plan.

Plaintiffs argue that Great Lakes' St. Paul office is a "new business location" because upon the merger with Northstar in April 1997, Great Lakes began activities that it had never previously conducted in Minnesota. Because they were hired within 24 months of this date, plaintiffs claim they are entitled to the extra week's pay for each month of service under the Plan.

Great Lakes argues that "new business location" does not include offices where Great Lakes simply assumed the operations of a previous company, such as Northstar's St. Paul office. Great Lakes further contends that St. Paul is not a new business location because it had marketing employees operating in St. Paul since 1991. Great Lakes notes that plaintiffs have already received everything specified in the February 14 letter, and argues that plaintiffs released Great Lakes from any further claims they may have had under the Plan. Plaintiffs claim they are not challenging the release agreement, but assert that they have not received their full consideration for signing the release – namely, the one week's pay per month for employees of "new business centers."

## ANALYSIS

The cross-motions for summary judgment present four issues: (1) whether the Court should review Great Lakes' interpretation of the Plan under an "abuse-of-discretion" standard or a *de novo* standard; (2) whether Great Lakes' interpretation of "new business location" is reasonable; (3) whether the waiver agreement signed by plaintiffs bars their claims; and (4) whether Great Lakes modified the Plan by its letter of February 14, 2000.

### I. Summary Judgment Standard of Review

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

### II. ERISA Standard of Review

There are no disputed material facts in this case; the key question is how to interpret the term "new business location" as it is used in the Great Lakes Plan. The

Court must first determine whether to review Great Lakes' interpretation of the Plan under a deferential "abuse of discretion" standard or under the more rigorous *de novo* standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112-13 (1989).

The U.S. Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber*, 489 U.S. at 115. If the plan confers discretion on the plan administrator, a deferential abuse-of-discretion standard of review applies.[1] *Bounds v. Bell Atlantic Enterprises Flexible Long-Term Disability Plan*, 32 F.3d 337, 339 (8th Cir. 1994). Courts may apply the abuse-of-discretion standard only if the plan contains "explicit discretion-granting language." *Id.* The Eighth Circuit has no bright line test for identifying such language, nor has it prescribed model language that would be acceptable. *Cf. Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) (commending to employers specific "safe harbor" language which, if included in ERISA plans, will guarantee that plan administrators' interpretations receive a deferential review).[2] In order to determine whether the Great Lakes Plan "indicates with

---

[1] This standard sometimes is called the "arbitrary-or-capricious" standard. *See Bounds v. Bell Atlantic Enterprises Flexible Long-Term Disability Plan*, 32 F.2d 337, 339 (8th Cir. 1994).

[2] Plaintiffs suggest that because the Great Lakes Plan does not contain language like that in *Herzberger*, the Court may not apply the abuse-of-discretion standard. The Court, however, need not rely on "magic words" to determine the scope of judicial review. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). In *Herzberger*, the Court explained that the

Footnote continued on next page.)

the requisite [of] minimum clarity" that a discretionary determination is intended, the Court finds it useful to compare the Plan's language with that from Eighth Circuit cases that have considered this issue. *Id.*

In the following cases, the Eighth Circuit found that ERISA plans contained explicit discretion-granting language. In *Fletcher-Merrit v. Noram Energy Corp.*, the court held that a plan gave its administrator discretion by providing that "the plan administrator has the right and responsibility to interpret the respective plan, to decide all issues concerning it, and to establish rules and procedures." 250 F.3d 1174, 1179 (8th Cir. 2001). In *Kennedy v. Georgia-Pacific Corp.*, the court determined that discretionary authority was granted to Georgia Pacific through language making it "solely responsible for the administration and interpretation of [the] Plan." 31 F.3d 606, 609 (8th Cir. 1994). In *Collins v. Central States, S.E. & S.W. Areas Health & Welfare Fund,* the court applied

---

(Footnote continued.)
absence of the Seventh Circuit's "safe harbor" language does not compel a conclusion that the administrator has no discretion:

> In some cases the nature of the benefits or the conditions upon it will make reasonably clear that the plan administrator is to exercise discretion. In others the plan will contain language that, while not so clear as [the Seventh Circuit's] "safe harbor" proposal, indicates with the requisite [of] minimum clarity that a discretionary determination is envisaged.

*Id.*

Furthermore, in decisions issued since *Herzberger*, the Eighth Circuit has not adopted a bright line test like that of the Seventh Circuit. *See, e.g., Fletcher-Merrit v. Noram Energy Corp.*, 250 F.3d 1174 (8th Cir. 2001); *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 839 (8th Cir. 2001). The Court therefore concludes that, contrary to plaintiffs' suggestion, the Eighth Circuit requires no specific verbal formulation to trigger the abuse-of-discretion standard.

the abuse-of-discretion standard when the plan gave trustees power to construe the terms, decide all controversies regarding payment of claims, and "determine all matters of eligibility for the payment of claims." 18 F.3d 556, 559 (8th Cir. 1994). In *Brumm v. Bert Bell NFL Retirement Plan,* the court held that plan trustees had discretionary authority where the plan gave them power to "define and amend the terms of the Plan and Trust, to construe the Plan and Trust and to reconcile inconsistencies therein." 995 F.2d 1433, 1437 (8th Cir. 1993). In *Finley v. Special Agents Mutual Benefit Ass'n, Inc.*, the court held that plan trustees had discretion to define ambiguous provisions where the plan allowed payment of benefits for deaths resulting "directly from a confrontational situation . . . as determined by the [plan administrator's] Board of Directors." 957 F.2d 617, 619 (8th Cir. 1992). In *Cox v. Mid-America Dairymen, Inc.*, the court applied a deferential standard of review where the trust agreement stated: "The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan." 13 F.3d 272, 274 (8th Cir. 1993). *See generally, Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616, 620-622 (8th Cir. 1994) (summarizing Eighth Circuit cases on discretion-granting language).

There are fewer concrete examples of language that has led the Eighth Circuit to apply the *de novo* standard of review. In such cases, plan administrators have generally argued that standard policy language grants them sufficient discretion to trigger deferential review. The Eighth Circuit has generally disagreed, holding instead that

provisions which "read like a typical insurance policy . . . do not trigger the deferential ERISA standard of review." *Ravenscraft v. Hy-Vee Employee Ben. Plan & Trust*, 85 F.3d 398, 402 n.2 (8th Cir. 1996). In *Brown v. Seitz Foods, Inc. Disability Ben. Plan*, the court held that phrases like "to be considered disabled," "normally," "as long as the definition of total disability is satisfied," and "due . . . proof of loss" do not necessarily imply that a plan administrator has sufficient discretion to trigger the abuse-of-discretion standard. 140 F.3d 1198, 1200 (8th Cir. 1998). In *Walke v. Group Long Term Disability Ins.*, the plan's language provided that benefits would be paid if the insured "submits satisfactory proof of total disability to us." 256 F.3d 835, 839 (8th Cir. 2001). The Court held that this was not sufficient to trigger deferential review. *Id.* In *Bounds*, the court determined that a typical insurance policy proof-of-loss provision was not explicit enough to trigger the deferential abuse-of-discretion standard. 32 F.3d at 339.

In the present case, Great Lakes' Plan provides in relevant part that "[n]othing in this document is intended to . . . restrict the Corporation's right to . . . interpret the provisions of this Plan." Harril. Dec. Tab 1. Although this language is not as unequivocal as some cited above, it is far more discretion-granting than the standard policy terms that trigger *de novo* review under Eighth Circuit case law. Therefore, this Court holds that the Plan explicitly grants discretion to Great Lakes, and that the Court should therefore review Great Lakes' interpretation under the abuse-of-discretion standard.

## III. Great Lakes' Interpretation

Under the abuse-of-discretion standard of review, Great Lakes' interpretation of the Plan will be upheld if it is reasonable. *Finley*, 957 F.2d at 621. The Court examines five factors to determine whether Great Lakes' interpretation of "new business location" is reasonable: (1) whether the interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent; 3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; 4) whether Great Lakes has interpreted the provisions at issue here consistently; and 5) whether the interpretation is contrary to the clear language of the Plan. *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1344 (8th Cir. 1997; *Finley*, 957 F.2d at 621.

In applying these factors to the Plan, the Court looks to Great Lakes' Human Resource Guidelines Number 109, which has been submitted by both parties. *See* Harril Dec. Ex. 1; Jacobson Aff. Ex. 3. Under the heading "Purpose," this document states that the Plan "is designed to continue [the employee's] salary for a certain period of time based on [the employee's] service" when the employee leaves Great Lakes. The Court finds that Great Lakes' interpretation of "new business location" is consistent with the goals of the plan. Great Lakes' interpretation does not affect whether employee salaries are continued, but only the length of time that severance is paid. Second, the Court has reviewed the Plan guidelines, and finds that Great Lakes' interpretation renders no language in the Plan meaningless or internally inconsistent. As for the third and fourth

factors, the Court finds no evidence that Great Lakes' interpretation conflicts with ERISA, nor any that Great Lakes has interpreted "new business location" inconsistently. Finally, the Court finds that Great Lakes' interpretation is not contrary to the clear language of the plan. In sum, the Court concludes that Great Lakes' interpretation of the Plan and of the term "new business location" is reasonable, and therefore must stand. The issues of waiver and modification noted above are therefore moot. Defendant's motion for summary judgment will be granted, and plaintiffs' motions denied.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Docket No. 27] is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment [Docket No. 16] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 18, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*